JANVIER, Judge.
This suit results from most unusual facts. After the plaintiffs had purchased from the defendant a piece of improved real estate in Hancock County, Mississippi, it was discovered that a portion of the residence extended over the boundary line of the land which they had purchased, being partially located on the property of another property owner. When their vendor refused to interest himself in solving their problem, plaintiffs purchased the entire adjoining lot from the other owner, and then brought suit against their vendor seeking to recover the entire amount paid for the adjacent lot which they had bought, and also to recover damages for mental suffering.
There was judgment in favor of plaintiffs for one-half the cost of the adjoining lot and dismissing the claim for mental suffering, and defendant has appealed. Plaintiffs have answered the appeal, praying that the amount awarded them be increased to the amount originally prayed for.
The facts are not in dispute except in one comparatively unimportant detail.
The defendant, Frank Van Haelen, on August 29, 1947, bought lot 102 in a real estate subdivision known as Gulf Gardens Subdivision, in Waveland, Mississippi. He did not have a survey made to determine the boundaries of this lot but, soon after acquiring it, he commenced the construction of a concrete and brick residence. Shortly before the building was completed, Mr. and Mrs. Jarreau M. Villere, the plaintiffs, became interested in purchasing a residence in Waveland, and on April 1st, 1950, for $3500, they purchased from Van Haelen, the defendant, the property which he owned in this subdivision, the property being described as follows:
“Lot 102, Gulf Gardens Subdivision, Third Ward, Town of Waveland, Hancock County, Mississippi, as per map or plat of said subdivision on file in the office of the Chancery Clerk of Hancock County, Mississippi.
“Together with all and singular the rights, privileges, improvements and appurtenances to the same belonging or in any wise appertaining. * * * ”
Again no survey was made. Shortly thereafter it was discovered that a portion of the building extended beyond the boundary line of lot 102 upon lot 101, which lot 101 belonged to a corporation known as Modern Homes, Inc. The corner of the building which extended over the boundary line was 17 feet on one side and 16 feet on the other, and it is agreed that the total amount of land covered by this encroachment was 264 square feet. As soon as this was discovered the plaintiffs called it to the attention of the defendant by letter written by Mrs. Jarreau M. Villere and reading as follows: 1
“Waveland, Miss.
May 2, 1950
“Mr. Frank Van Haelen
324 Henry Clay Ave.,
New Orleans, La.
In re: Purchase of Lot 102, Gulf Gardens, Waveland, Miss.
“Dear Mr. Van Haelen:
“During the beginning of April of this year my husband and I purchased from you the above mentioned lot, upon which was located a house; you pointed out the house to us before we purchased it and under the deed that you executed you warranted that the property we were purchasing from you was free from all liens and encumbrances.
“It now develops that the house that you built, and which you represented to us as being on Lot 102, Gulf Gardens, is in truth and in fact on part of Lot 101 of Gulf Gardens subdivision. This was arrived at by a survey of said property made by J. Roland Weston, at our request.
“It is your duty, under your warranty as we understand it, to give a merchantable title to the property that we purchased from you, and we therefore hereby notify you that the property is encumbered as herein stated.
“We have been advised that Lot 101, Gulf Gardens, belongs to Modern Plomes, Inc., Waveland, Miss., and suggest that you immediately contact them for the purpose *596 of clarifying the situation as it now exists
“Yours very truly, '
(sgd) Mrs. Jarreau M. Villere
“Registered Mail • return receipt requested”
The defendant says that he did nothing to rectify the situation. The building is of such construction that it seems quite evident that it was practically impossible that it be moved, and the plaintiffs then opened negotiations with the owners of lot 101 for the purchase of so much thereof as they might require. The owners of this lot 101 refused to sell any fractional portion thereof, but did offer to sell the entire lot. Finding it impossible to purchase only a portion of the lot, plaintiffs then purchased the entire lot for $595, which the record shows was not more than its proper market value. Plaintiffs then brought this suit.
The district judge rendered a judgment, as we have already said, for $297.50, .giving written reasons therefor as follows:
“The parties to this suit, plaintiffs and defendants, are residents of and domiciled in the Parish of Orleans, State of Louisiana.
“The plaintiffs bought a piece of property in Mississippi from the defendant. It was afterwards found additional property was needed in order to effectually carry out the intent of the parties at the time the sale was made.
“When Mr. VanHaelen purchased the lot upon which he built the house, he had no survey made: and when Mr. and Mrs. Villere purchased from Mr. VanHaelen' they also neglected to have a survey made.
“No one acted fraudulently in this case and I acquit everyone of fraud.
“But in the court’s opinion both parties were negligent in not having surveys made before each of them purchased this property.
“This court sitting as a court of equity believes the fair and equitable decision in this case would be to cast Mr. VanITaelen for one half of $595, the cost of the additional property required, or $297.50. That is his penalty for having been negligent in not obtaining a survey before he constructed the building.
“The other $297.50 is the penalty to Mr. and Mrs. Villere for having been negligent in not having a survey made prior to their purchase.
“The court sympathizes with the defendant as well as with the plaintiffs, but believes this is the fairest and most equitable way, irrespective of the laws of the State of Mississippi, to settle this matter.
“The court does not believe it should allow the other items claimed by plaintiffs, for the reason these amounts were incurred by them because of their failure to have their property surveyed before title was passed. ■ ■
” “For the reasons assigned there will be judgment in favor of the plaintiffs and against the defendant in the sum of $297.50 with legal interest from judicial demand and all costs of this suit.
“(Dictated in open court, on submission on the matter, New Orleans, June 7, 1951.)”
One of the first contentions of defendant is that this is an action ex contractu for breach of the general covenant of warranty, and that, under the laws of the State of Mississippi, it cannot be maintained in the absence of allegation and proof of either actual eviction by judicial process, or of surrender of possession to a valid title, or unless it can be alleged and proven that the plaintiffs were held out of possession by a valid title.
There is in the record proof, in a form to which no exception has been made, that such is the law of the State of Mississippi, and yet we do not see that, under the facts shown here, it should prevent plaintiffs from prosecuting this action. It is conceded that, as a matter of fact, the building which was sold by defendant to plaintiffs is located partially on land to which defendant -had no title and to which .Modern Homes, Inc., actually did have title, and it necessarily follows that the plaintiffs -were' required to do whatever might be necessary within the bounds of reason to remedy the situation.
We cannot be persuaded that, under the laws of Mississippi, if a purchaser finds that he has been sold property to which admittedly his vendor had no title, he must *597 require the person who is admittedly the true owner to resort to legal proceedings before he can have redress against his vendor. Such action might be necessary if there were any dispute over the title to the land on which the encroachment rests, but there is no dispute, defendant conceding that he did not own that particular piece of land and that it actually did b^on" to the corporation from which plaintiffs were required to purchase it.
The two Mississippi cases on which defendant relies in support of his contention that such a suit may not be maintained unless there is actual eviction or its equivalent are Burrus v. Wilkinson, 31 Miss. 537, and Witty v. Hightower, 12 Smedes & M. 478, 20 Miss. 478. But in each of these cases there was a dispute over the question of who actually owned the property and a judicial determination of this question was necessary. In the former of those cases, Burrus v. Wilkinson, the Court discussed the identical point which we have considered; that is, whether judicial eviction is necessary, where there is no dispute over the title, and held that the contention, that there must be a judicial eviction even where there is no dispute over the title, was not tenable. The Court said: “ * * * It is true that the covenantee may recover upon such a warranty, though he may have yielded the possession voluntarily, provided the title to which he yielded be good and paramount to that of his warrantor; because against such a title he is not obliged to submit to a law suit, upon a claim which must certainly prevail.”
In view of the concession that defendant did not own the property on which the encroachment was located and that it was owned by the corporation from which plaintiffs purchased it ultimately, it would be absurd to hold that plaintiffs, having done what they did to minimize their damage, could not maintain this action against their vendor until they had first required the true owner to legally evict them.
Counsel for defendant further contend that if there is in this case any element of an action ex delicto, then the law of the forum, that is, the law of Louisiana concerning the admissibility of evidence must control, and that there cannot be considered any evidence of what covenants, or conditions, or stipulations were acted upon by plaintiffs except those which actually appear in the deed itself. This contention results from the fact that plaintiffs maintain that before they purchased the property defendant pointed out to them what he said were the boundary lines of the property, and that the entire building was well within those boundary lines. Counsel say that plaintiffs cannot be permitted to prove such verbal statements as may have been made by the defendant concerning the boundary lines, and they further say that, as a matter of fact, the record does not show that defendant made any such statements.
On this point we do not see that any oral warranties were necessary. We think that the general warranty contained in the title itself is sufficient for the basis of such an action as this. Surely a vendor, who transfers property with the improvements thereon, warrants the fact that the buildings are on the land which is transferred.
We have no doubt at all that, when.it was discovered that the title which the defendant transferred did not include that small portion of land on which was located a part of the building, and when the vendor, having been called upon to remedy the situation, did nothing at all, the plaintiffs were within their rights in doing what they could to secure sufficient land to accommodate the building in the location in which it was when it was sold to them by the vendor.
The only question which seriously worries us is just how much of the amount expended for the purchase of the additional lot should be refunded to the plaintiffs .by their vendor.
The entire lot purchased was 60 feet in width, whereas approximately one-half of that lot would have accommodated the encroachment and would have provided a sufficient width for a small driveway between the end of the encroachment arid what then • would have been the property line. It therefore appears that, as a result *598 of being forced to purchase the entire lot, the plaintiffs are now the owners of more property than was actually necessary. We do not think that all of this additional lot should be charged to the defendant, and it is our opinion that the Solomon-like decision arrived at by our Brother below effects substantial justice between the parties.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.